THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

| | | |
|---|---|---|
| RICHARD J. KLEIN, | ) | **Case No. 2:09-CV-1342 JCC** |
| Plaintiff, | ) | |
| v. | ) | |
| GREGORY DEMOPULOS, an individual, RAY ASPIRI, an individual, THOMAS CABLE, an individual, PETER DEMOPULOS, an individual, LEROY HOOD, an individual, DAVID MANN, an individual, JEAN-PHILIPPE TRIPET, an individual, and OMEROS CORPORATION, a Washington Corporation, | ) ) ) ) ) ) ) ) ) | **DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT FOR DAMAGES AND COUNTERCLAIMS** |
| Defendants. | ) | |

Defendant Omeros Corporation answers Richard J. Klein's ("plaintiff") Complaint for Damages as follows. Except as expressly admitted, Defendant Omeros denies the allegations of the Complaint for Damages.

## I.    ANSWER TO ALLEGATIONS REGARDING "PARTIES"

1.    Answering paragraph 1, Defendant Omeros admits the allegations in this paragraph on information and belief.

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 1
(Case No. 2:09-CV-1342 JCC)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1    2.    Answering paragraph 2, Defendant Omeros admits the allegations in this
2    paragraph.

3    3.    Answering paragraph 3, Defendant Omeros admits the allegations in this
4    paragraph.

5    4.    Answering paragraph 4, Defendant Omeros admits the allegations in this
6    paragraph.

7    5.    Answering paragraph 5, Defendant Omeros admits the allegations in this
8    paragraph.

9    **II.    ANSWER TO ALLEGATIONS REGARDING "JURISDICTION AND VENUE"**

10    6.    Answering paragraph 6, this paragraph is a statement of plaintiff's legal position
11    and does not require a response.  If a response is required, Defendant Omeros does not contest
12    the jurisdiction of this Court.  Defendant Omeros denies that plaintiff has any meritorious claims
13    under the Federal False Claims Act or that the plaintiff is entitled to any relief whatsoever in this
14    action.

15    7.    Answering paragraph 7, this paragraph is a statement of plaintiff's legal position
16    and does not require a response.  If a response is required, Defendant Omeros does not contest
17    the supplemental jurisdiction of the Court.  Defendant Omeros denies that plaintiff has any
18    meritorious supplemental claims or that the plaintiff is entitled to any relief whatsoever in this
19    action.

20    8.    Answering paragraph 8, this paragraph is a statement of plaintiff's legal position
21    and does not require a response.  If a response is required, Defendant Omeros does not contest
22    venue.

23    **III.    ANSWER TO ALLEGATIONS REGARDING "FACTUAL BACKGROUND"**

24    9.    Answering paragraph 9, Defendant Omeros admits the allegations in this
25    paragraph.

26    10.    Answering paragraph 10, Defendant Omeros admits the allegations in this
27    paragraph, although they are incomplete and out of context.  Defendant Omeros states that the

28

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 2
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1   Indemnification Agreement did not provide a right of indemnity in "any action, suit, claim or

2   proceeding instituted by or at the direction of Indemnitee unless such action, suit, claim or

3   proceeding is or was authorized by the Company's Board of Directors." Defendant Omeros

4   states that no such authorization was ever provided to plaintiff by the Omeros Board of

5   Directors.

6       11.     Answering paragraph 11, Defendant declines to speculate as to the meaning of the

7   phrase "problems and issues," and therefore, denies the allegations in this paragraph.

8   Defendant Omeros specifically denies any implication that Omeros' business, financial and

9   accounting practices and procedures were unlawful or improper. Defendant Omeros states that,

10  as Chief Financial Officer, plaintiff was responsible to test and improve Omeros' business,

11  financial and accounting practices and procedures.

12      12.     Answering paragraph 12, Defendant Omeros denies the allegations in this

13  paragraph.

14      13.     Answering paragraph 13, Defendant Omeros denies the allegations in this

15  paragraph. Defendant Omeros specifically denies any implication that Dr. Demopulos

16  unlawfully failed to report taxable income or attempted to engage in any improper practice

17  concerning the tax reporting of his exercise of stock options or payment of taxes from a bonus

18  award, or that plaintiff discovered or remedied any such attempt.

19      14.     Answering paragraph 14, Defendant Omeros denies the allegations in this

20  paragraph.

21      15.     Answering paragraph 15, Defendant Omeros denies the allegations in this

22  paragraph.

23      16.     Answering paragraph 16, Defendant Omeros denies the allegations in this

24  paragraph. Defendant Omeros states that Omeros gave Klein the choice to wait to exercise his

25  options until the Board determined a current fair market value, but Klein chose to exercise his

26  stock options when there was not a current Board-determined value, which required Omeros to

27  estimate the fair market value of the stock. Defendant Omeros states that Omeros provided a

28

**DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS** - 3
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1  range in which Omeros thought the fair value might lie and plaintiff determined that the fair

2  market value of the stock at the time of plaintiff's exercise was $1.75. Defendant Omeros

3  specifically denies any attempted implication that Omeros or Dr. Demopulos retaliated against

4  plaintiff.

5      17.    Answering paragraph 17, Defendant Omeros admits that Omeros' Controller

6  untimely submitted an expense report in November 2008. Defendant Omeros denies the

7  remaining allegations in this paragraph. Defendant Omeros specifically denies any attempted

8  implication that Omeros' practices and procedures were unlawful or improper and denies that

9  any amounts properly due to the State of Washington were not paid. Defendant Omeros

10  affirmatively states that plaintiff's failure to propose an appropriate signature policy and

11  plaintiff's repeated refusal to accept an appropriate signature policy caused the delay in

12  implementation of the signature policy, not any inaction on the part of other officers of Omeros.

13      18.    Answering paragraph 18, Defendant Omeros admits that plaintiff met with the

14  Chair of the Audit Committee regarding the signature policy in November 2008. Defendant

15  Omeros denies the remaining allegations in this paragraph. Defendant Omeros specifically

16  denies any attempted implication that Omeros' practices and procedures were unlawful or

17  improper. Defendant Omeros specifically denies that the reports prior to December 2, 2008,

18  invoked or constituted a complaint or report under the company's Whistleblower Policy.

19      19.    Answering paragraph 19, Defendant Omeros admits that Dr. Demopulos and

20  plaintiff met to discuss financial matters related to Omeros, including the signature policy, after

21  plaintiff's meeting with the Audit Committee. Defendant denies that plaintiff raised the issue of

22  "Defendant Gregory Demopulos' anger about [plaintiff's] reports to the Audit Committee."

23  Defendant Omeros denies the remaining allegations in this paragraph. Defendant Omeros states

24  that plaintiff and Dr. Gregory Demopulos met on December 2, 2008, and after they discussed

25  company financial issues, the meeting turned into a verbal evaluation of plaintiff's performance,

26  and Dr. Demopulos identified specific areas for improvement in plaintiff's performance,

27

28

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 4
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1  including, but not limited to, plaintiff's excessive delegation of substantive work and plaintiff's
2  distracting behavior during meetings with others, as well as other issues.

3        20.    Answering paragraph 20, Defendant Omeros admits that plaintiff requested a
4  formal performance review and admits that in a company meeting Dr. Demopulos recognized the
5  efforts of the transaction team and plaintiff for their efforts in contributing to securing debt
6  financing, in an attempt to make plaintiff feel like part of the team and in an attempt to build
7  plaintiff's credibility within the company, given negative impressions of plaintiff held by other
8  Omeros employees.    Defendant Omeros specifically denies that plaintiff was primarily
9  responsible for closing a $20 million debt financing deal and denies all other allegations in this
10 paragraph.

11       21.    Answering paragraph 21, Defendant Omeros admits the allegations in this
12 paragraph, and that, relevant to this action, Omeros is the successor-in-interest to certain grants
13 awarded by the National Institute of Health ("NIH").

14       22.    Answering  paragraph  22,  Defendant  Omeros  denies  that  Defendant
15 Gregory Demopulos instructed scientists to falsely record their time.  Defendant Omeros admits
16 that Dr. Gaitanaris provided instructions on time keeping practices based on Dr. Gaitanaris'
17 belief that recording effort in keeping with these practices would result in total time allocations
18 to the grant that were less than the overall time actually spent on the grant by Omeros' personnel.
19 Defendant Omeros states that these practices, which were later corrected by Defendant Omeros,
20 did not result in any overbilling to the NIH grant, and rather the federal government was charged
21 for less than all time spent on the grant.  Defendant Omeros denies the remaining allegations in
22 this paragraph.

23       23.    Answering  paragraph  23,  Defendant  Omeros  denies  that  Defendant
24 Gregory Demopulos instructed scientists to falsely record their time.  Defendant Omeros admits
25 that Dr. Gaitanaris provided instructions on time keeping practices based on Dr. Gaitanaris'
26 belief that recording effort in keeping with these practices would result in total time allocations
27 to the grant that were less than the overall time actually spent on the grant by Omeros' personnel.

28

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 5
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1    Defendant Omeros states that these practices, which were later corrected by Defendant Omeros,

2    did not result in any overbilling to the NIH grant, and rather the federal government was charged

3    for less than all time spent on the grant.  Defendant Omeros denies the remaining allegations in

4    this paragraph.

5         24.    Answering paragraph 24, Defendant Omeros admits that plaintiff reported a

6    concern regarding timekeeping practices on an NIH grant project to the Audit Committee and

7    denies the remaining allegations in this paragraph.

8         25.    Answering paragraph 25, Defendant Omeros admits that Ms. Kelbon and

9    Dr. Demopulos met with plaintiff regarding his complaint.  Defendant Omeros states that

10   Ms. Kelbon and Dr. Demopulos assured plaintiff that they were taking the complaint seriously

11   and that Ms. Kelbon asked plaintiff if plaintiff would like to report anything else about plaintiff's

12   concerns to her.  Defendant Omeros denies the remaining allegations in this paragraph.

13   Defendant Omeros specifically denies that Dr. Demopulos or Ms. Kelbon retaliated against

14   plaintiff in any way.

15        26.    Answering paragraph 26, Defendant Omeros admits that Dr. Demopulos

16   requested Ms. Kelbon's presence at a meeting with plaintiff.  Defendant Omeros denies the

17   remaining allegations in this paragraph.  Defendant Omeros specifically denies that

18   Dr. Demopulos or Ms. Kelbon retaliated against plaintiff in any way.

19        27.    Answering paragraph 27, Defendant Omeros denies any implication that plaintiff

20   discovered "fraudulent timekeeping."  Defendant Omeros states that it launched an immediate

21   investigation into plaintiff's complaint.  Defendant Omeros admits the remaining allegations in

22   this paragraph.

23        28.    Answering paragraph 28, Defendant Omeros admits that plaintiff incurred

24   personal legal fees, but specifically denies that these fees were incurred as the result of plaintiff's

25   involvement in the Audit Committee's investigation.  Defendant Omeros denies the remaining

26   allegations in this paragraph. Defendant Omeros states that plaintiff later presented billings from

27   his attorneys for a period of time that extended well beyond the completion by the Audit

28

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 6
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1    Committee of its investigation and that consisted primarily of billings for services of an

2    employment law attorney, who apparently provided plaintiff advice on his own employment with

3    Omeros, and unrelated to matters, for which plaintiff could properly claim indemnification from

4    Omeros.

5        29.    Answering paragraph 29, Defendant Omeros admits that the Audit Committee

6    investigation concluded that some of the scientists had recorded in the company's timekeeping

7    system more hours than they individually had actually worked during the relevant time period,

8    while others recorded actual hours worked or less than actual hours worked, during that specific

9    reporting period.  However, those reports did not result in any false billing of the government

10   because of internal controls placed by Omeros' Controller, which a reasonably diligent or even

11   cursory investigation by plaintiff would have revealed, if conducted prior to the time that

12   plaintiff made the whistleblower report to the Audit Committee.  Defendant Omeros specifically

13   denies any implication it billed the government more hours than the scientists actually worked.

14       30.    Answering paragraph 30, Defendant Omeros admits that plaintiff requested a

15   formal performance review with Dr. Demopulos to discuss his performance.  Throughout the

16   tenure of plaintiff's employment, Dr. Demopulos and plaintiff had frequent discussions about

17   plaintiff's job performance in which Dr. Demopulos advised plaintiff about concerns with

18   plaintiff's performance and suggested improvements.  Defendant Omeros states that plaintiff's

19   performance reviews were handled in the same informal manner as with other executives of

20   Omeros.  Defendant Omeros denies the remaining allegations in this paragraph.

21       31.    Answering paragraph 31, Defendant Omeros admits that Dr. Demopulos

22   discussed plaintiff's performance in a meeting on January 6, 2009, and that in response to

23   plaintiff's question regarding continued employment with Omeros for a period of three years,

24   Dr. Demopulos informed plaintiff that he could not guarantee continued employment and that

25   plaintiff's employment was at-will.  Defendant Omeros denies the remaining allegations in this

26   paragraph.  Defendant Omeros specifically denies any attempted implication that Dr. Demopulos

27   or Omeros unlawfully retaliated against plaintiff.

28

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 7
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1      32.    Answering paragraph 32, Defendant Omeros admits the allegations in this
2  paragraph.

3      33.    Answering paragraph 33, Defendant Omeros admits that plaintiff was placed on
4  administrative leave on January 13, 2009, and was eventually terminated. Defendant Omeros
5  denies the remaining allegations in this paragraph. Defendant Omeros specifically denies any
6  attempted implication that Omeros unlawfully retaliated against plaintiff.

7      34.    Answering paragraph 34, Defendant Omeros admits the allegations in this
8  paragraph.

9      35.    Answering paragraph 35, Defendant Omeros admits that David Mann, Chair of
10 the Audit Committee, resigned in March of 2009.

11     36.    Answering paragraph 36, Defendant Omeros admits that it filed its S-1
12 Registration Statement and Preliminary Prospectus with the SEC and that the S-1 is accessible by
13 the public. Defendant Omeros denies the remaining allegations in this paragraph, and the bold
14 captioned phrase that precedes it.

15     37.    Answering paragraph 37, Defendant Omeros admits that plaintiff reported that he
16 believed that employees were improperly recording their time to the NIH grant. Defendant
17 Omeros admits that plaintiff claimed that Dr. Demopolus and Dr. Gaitanaris had acted
18 improperly with regard to the time-recording matters alleged by plaintiff. Defendant Omeros
19 states that only the allegation regarding scientists incorrectly reporting certain hours worked on a
20 particular grant were sustained by the Audit Committee, and states that no improper billing to the
21 federal government resulted due to internal controls of the company, and that rather the federal
22 government was charged for less than all time spent on the grant. Defendant Omeros denies that
23 any allegation against Defendant Dr. Gregory Demopulos was sustained by the Audit
24 Committee. Defendant Omeros admits that Dr. Gaitanaris provided instructions on time keeping
25 practices based on Dr. Gaitanaris' belief that recording effort in keeping with these practices
26 would result in total time allocations to the grant that were less than the overall time actually
27 spent on the grant by Omeros' personnel. Defendant Omeros states that these practices, which

28
DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 8
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1  were later corrected by Defendant Omeros, did not result in any overbilling to the NIH grant, and

2  rather the federal government was charged for less than all time spent on the grant.  Defendant

3  Omeros denies the remaining allegations or implication in this paragraph.

4        38.     Answering paragraph 38, Defendant Omeros admits that its S-1 states that

5  plaintiff Klein reported to the Audit Committee that "the Company had submitted grant

6  reimbursement claims to the NIH for work that the company had not performed" and that the

7  Audit Committee with the assistance of special outside counsel concluded that "the Company

8  had not submitted claims to the NIH for work the Company had not performed."  Defendant

9  Omeros denies the remaining allegations in this paragraph, and specifically denies that any of the

10  statements in its S-1 were false or misleading.

11        39.     Answering paragraph 39, Defendant Omeros admits that its S-1 states that "the

12  Company terminated Mr. Klein's employment for reasons other than this incident."  Defendant

13  Omeros denies the remaining allegations in this paragraph, and specifically denies that any of the

14  statements in its S-1 were false or misleading.  Defendant Omeros specifically denies the

15  allegation that its disclosure implied that Mr. Klein's conduct was unlawful.

16        40.     Answering paragraph 40, Defendant Omeros specifically denies that its S-1 does

17  not contain any disclosure about Mr. Mann, and also denies that the allegations in this paragraph

18  have any bearing upon the matters alleged in this suit.

19        41.     Answering paragraph 41, Defendant Omeros denies the allegations in this

20  paragraph.

21            **IV.    ANSWER TO PLAINTIFF'S "CLAIMS"**

22  **A.    Answer to Plaintiff's Claim Regarding "Violation of the Federal False**

23        **Claims Act"**

24        42.     Answering paragraph 42, Defendant Omeros fully incorporates the admissions

25  and denials in paragraphs 1-41 above.

26        43.     Answering paragraph 43, Defendant Omeros denies that Omeros billed the NIH

27  for hours that were not performed in support of the grant project.  The remainder of this

28

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 9
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1  paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant

2  Omeros therefore denies the same.

3      44.    Answering paragraph 44, this paragraph is a statement of plaintiff's legal position,

4  which requires no answer, and Defendant Omeros therefore denies the same.

5      45.    Answering paragraph 45, Defendant Omeros denies that Omeros billed the NIH

6  for hours that were not performed in support of the grant project.    The remainder of this

7  paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant

8  Omeros therefore denies the same.

9      46.    Answering paragraph 46, Defendant Omeros admits that plaintiff "blew the

10  whistle" on what he said he believed were problems with reports related to hours worked on the

11  NIH grant.    Defendant Omeros cannot determine what plaintiff actually did or did not know

12  about the truth or falsity of these allegations and therefore denies that plaintiff became aware of

13  anything.    Defendant Omeros denies that Omeros billed the NIH for hours that were not

14  performed.    The remainder of this paragraph is a statement of plaintiff's legal position, which

15  requires no answer, and Defendant Omeros therefore denies the same.

16      47.    Answering paragraph 47, Defendant Omeros denies the allegations in this

17  paragraph.

18      48.    Answering paragraph 48, this paragraph is a statement of plaintiff's legal position,

19  which requires no answer, and Defendant Omeros therefore denies the same.

20  **B.    Answer to Plaintiff's Claim Regarding "Wrongful Discharge in Violation of Public Policy"**

21

22      49.    Answering paragraph 49, Defendant Omeros fully incorporates the admissions

23  and denials in paragraphs 1-48 above.

24      50.    Answering paragraph 50, this paragraph is a statement of plaintiff's legal position,

25  which requires no answer, and Defendant Omeros therefore denies the same.

26      51.    Answering paragraph 51, this paragraph is a statement of plaintiff's legal position,

27  which requires no answer, and Defendant Omeros therefore denies the same.

28

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 10
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

52. Answering paragraph 52, this paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

53. Answering paragraph 53, Defendant Omeros admits the allegations in this paragraph.

54. Answering paragraph 54, this paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

55. Answering paragraph 55, this paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

56. Answering paragraph 56, this paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

57. Answering paragraph 57, this paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

58. Answering paragraph 58, Defendant Omeros denies the allegations of this paragraph.

**C.    Answer to Plaintiff's Claim Regarding "Breach of Promise of Specific Treatment in a Specific Situation or Promissory Estoppel"**

59. Answering paragraph 59, Defendant Omeros fully incorporates the admissions and denials in paragraphs 1-58 above.

60. Answering paragraph 60, Defendant Omeros admits the allegations in this paragraph.

61. Answering paragraph 61, Defendant Omeros admits the allegations in this paragraph.

62. Answering paragraph 62, Defendant Omeros admits the allegations in this paragraph. Defendant Omeros affirmatively states that, as Chief Financial Officer, plaintiff's job duties required that he both investigate matters with a reasonable level of diligence before reporting under the policy, and that his job duties required that he have bottom line responsibility

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 11
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1  for certain financial reporting and billing matters within the company, including accounting for

2  and financial management of federal grant programs.

3      63.    Answering paragraph 63, Defendant Omeros denies the allegations of this

4  paragraph.  Defendant Omeros states that plaintiff made the whistleblower report to "mitigate"

5  his perception of a lack of job security, and did not present the complaint in good faith.

6      64.    Answering paragraph 64, Defendant Omeros admits the allegations in this

7  paragraph.

8      65.    Answering paragraph 65, this paragraph is a statement of plaintiff's legal position,

9  which requires no answer, and Defendant Omeros therefore denies the same.

10     66.    Answering paragraph 66, this paragraph is a statement of plaintiff's legal position,

11  which requires no answer, and Defendant Omeros therefore denies the same.

12     67.    Answering paragraph 67, this paragraph is a statement of plaintiff's legal position,

13  which requires no answer, and Defendant Omeros therefore denies the same.

14     68.    Answering paragraph 68, this paragraph is a statement of plaintiff's legal position,

15  which requires no answer, and Defendant Omeros therefore denies the same.

16  **D.    Answer to Plaintiff's Claim Regarding "Wrongful Withholding of Wages"**

17     69.    Answering paragraph 69, Defendant Omeros fully incorporates the admissions

18  and denials in paragraphs 1-68 above.

19     70.    Answering paragraph 70, Defendant Omeros denies the allegations of this

20  paragraph.

21     71.    Answering paragraph 71, Defendant admits that it stopped paying plaintiff after

22  he was terminated.  The remainder of this paragraph is a statement of plaintiff's legal position,

23  which requires no answer, and Defendant Omeros therefore denies the same.

24     72.    Answering paragraph 72, this paragraph is a statement of plaintiff's legal position,

25  which requires no answer, and Defendant Omeros therefore denies the same.

26     73.    Answering paragraph 73, this paragraph is a statement of plaintiff's legal position,

27  which requires no answer, and Defendant Omeros therefore denies the same.

28

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 12
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

74.     Answering paragraph 74, this paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

75.     Answering paragraph 75, this paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

**E.     Answer to Plaintiff's Claim Regarding "Breach of Indemnification Agreement"**

76.     Answering paragraph 76, Defendant Omeros fully incorporates the admissions and denials in paragraphs 1-75 above.

77.     Answering paragraph 77, Defendant Omeros admits the allegations in this paragraph.

78.     Answering paragraph 78, Defendant Omeros admits that the Indemnification Agreement stated that Omeros would reimburse plaintiff for fees he incurred according to the terms and definitions in the agreement, but specifically denies that the characterization of these terms and definitions set forth in paragraph 78 is complete.  Defendant Omeros specifically denies that the Indemnification Agreement requires Omeros to pay for any fees associated with plaintiff obtaining independent counsel related to the status of his employment with the company or those presented to the company for indemnity prior to the filing of this action.

79.     Answering paragraph 79, this paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

80.     Answering paragraph 80, Defendant Omeros denies the allegations in this paragraph on information and belief.

81.     Answering paragraph 81, Defendant Omeros admits that it has refused to pay legal fees associated with the status of plaintiff's employment with the company and personal legal fees incurred by plaintiff independent of the Audit Committee's investigation.

82.     Answering paragraph 82, this paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 13
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

**F.    Defamation**

83.    Answering paragraph 83, Defendant Omeros fully incorporates the admissions and denials in paragraphs 1-82 above.

84.    Answering paragraph 84, Defendant Omeros denies that any statements in its S-1 were false or misleading.    The remaining allegations in this paragraph are a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

85.    Answering paragraph 85, this paragraph is a statement of plaintiff's legal position, which requires no answer, and Defendant Omeros therefore denies the same.

## AFFIRMATIVE DEFENSES

Having fully answered the Complaint for Damages served by plaintiff, Defendant Omeros pleads the following defenses or affirmative defenses, without waiving any arguments that it may be entitled to assert concerning the burden of proof, legal presumptions or other legal characterizations:

1.    Pending discovery, plaintiff's Complaint for Damages in several parts fails to state a claim upon which relief may be granted.

2.    Some or all of plaintiff's claims fail because he unreasonably failed to avoid harm.

3.    Some or all of plaintiff's claims fail because of the doctrine of unclean hands.

4.    Some or all of plaintiff's claims fail because of the doctrine of after acquired evidence.

5.    Plaintiff's damages, if any, were proximately caused by or contributed to by acts, omissions, breaches of contract and/or other legal duties of the plaintiff.

6.    The acts and alleged injuries, if any, were proximately caused by or contributed to by the acts, omissions, breaches of contract and/or other legal duties of third parties over whom Defendant Omeros had no control.

7.    Plaintiff's assumed the risk of some of the harms about which he now complains.

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 14
(Case No. 2:09-CV-1342 JCC)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

8.    Plaintiff has failed to mitigate the alleged damages, if any.

9.    Without assuming any burden of proof not otherwise imposed by law, Defendant Omeros' actions with regard to the response to plaintiff's whistleblower complaint and with regard to discharge of plaintiff from employment were reasonable and undertaken in good faith.

10.    To the extent that a jury finds that Defendant Omeros was obligated to pay plaintiff wages beyond his termination date, there was a bona fide dispute regarding the compensation and the failure to pay such compensation was not willful.

11.    Without assuming any burden of proof not otherwise imposed by law, with regard to refusal to pay wages after termination of plaintiff's employment, Defendant Omeros' conduct with regard to the allegations in plaintiff's Complaint was reasonable, in good faith, and not willful.

12.    Without assuming any burden of proof or production not otherwise imposed by law, plaintiff's employment was at-will.

13.    Pending further discovery, some or all of plaintiff's claims may be barred by estoppel, laches, or other defenses set forth in FRCP 8(c).

14.    Pending further discovery, plaintiff's claims may be subject to the defenses set forth in FRCP 12(b).

15.    Defendant Omeros did not take any act alleged in the Complaint with the intent to defraud the federal government, and (without assuming any burden of proof not otherwise imposed by law) did not, in fact, defraud the government or draw down any grant funds to which Defendant Omeros was not entitled by the work performed on the grant in question.

16.    To the extent that a jury concludes that any improper, retaliatory motive contributed to or caused the decision to terminate the plaintiff's employment, which is specifically denied by Defendant Omeros, Defendant Omeros would have made the same decision in the absence of retaliatory factors.

**DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS** - 15
(Case No. 2:09-CV-1342 JCC)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

17.    Without assuming any burden of proof or production not otherwise imposed by law, the statements made by Defendant Omeros concerning plaintiff in its S-1 registration were substantially true.

18.    Defendant Omeros enjoyed a qualified or conditional privilege with respect to the statements made to the Securities and Exchange Commission with respect to plaintiff.

Defendant Omeros reserves the right to assert by supplemental pleading any affirmative defense or counterclaim which matures or is acquired after this answer is filed and served, or which comes to light through discovery in this action.

## V.    JURY TRIAL DEMAND

Defendant Omeros demands a jury trial.

## VI.    ANSWER TO PLAINTIFF'S REQUEST FOR "DAMAGES"

Answering plaintiff's request for damages, these paragraphs are statements of plaintiff's legal position, which require no answer. Notwithstanding the foregoing, Defendant Omeros denies that plaintiff has any claims or causes of action against Defendant under the statutes or legal theories that he attempts to invoke. Furthermore, Defendant Omeros denies that the plaintiff is entitled to any form of relief against Defendant.

## DEFENDANT OMEROS' COUNTERCLAIMS

### A.    PARTIES

1.    Defendant Omeros Corporation ("Omeros") is a Washington corporation doing business in Seattle, Washington.

2.    On information and belief, plaintiff Richard Klein is a resident of Seattle, Washington.

### B.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over Defendant Omeros' counterclaims because the action was instituted in this Court, and the Court has supplemental jurisdiction to hear related claims under 28 U.S.C. § 1367.

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 16
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

4.    Venue in the Western District is proper pursuant to 28 U.S.C. § 1391 because all of the acts alleged occurred in Seattle, Washington.

## C.    FACTS RELEVANT TO COUNTERCLAIMS

5.    Defendant Omeros hired plaintiff on May 14, 2007.

6.    Plaintiff signed an Employee Proprietary Information and Inventions Agreement ("PIIA") on May 14, 2007. The agreement prohibited plaintiff from disclosing or using any proprietary information, except as authorized by the company, and specifically required that plaintiff return to Omeros all proprietary information and other "documents, apparatus, equipment and other physical property in any form, whether or not pertaining to Proprietary Information" to Omeros upon termination of plaintiff's employment.

7.    Defendant Omeros obtained a grant from the National Institute of Health ("NIH") as a successor in interest to another company that it had acquired.

8.    The responsibilities of plaintiff's position assumed by plaintiff in May 2007 included management of Omeros' NIH grants, and Dr. Gregory Demopulos, M.D., Chief Executive Officer of Omeros, specifically underscored plaintiff's responsibility for personal supervision of the NIH grants in a series of emails in July 2008. Plaintiff was responsible for, among other things, monitoring the number of hours that Omeros' scientists worked on the project.

9.    On December 2, 2008, Dr. Demopulos met with plaintiff regarding various company issues. The meeting evolved into a verbal performance review of plaintiff's work. Dr. Demopulos identified specific problems and issues regarding plaintiff's performance. Plaintiff asked Dr. Demopulos if plaintiff would remain employed with Omeros for an extended period of time. Dr Demopulos reminded plaintiff that he was an at-will employee and that, particularly in view of plaintiff's performance problems, Dr. Demopulos could not guarantee that plaintiff would remain employed by Omeros.

10.    On December 3, 2008, plaintiff telephoned David Mann, the Chair of Omeros' Audit Committee. Plaintiff informed Mr. Mann that plaintiff thought something was wrong with

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 17
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1  "things" around the company. Mr. Mann asked plaintiff if he was making an official complaint,

2  or questioning the integrity of the financial statements of Omeros, and plaintiff said that he was

3  not. Plaintiff informed Mr. Mann that he needed to investigate his concerns before proceeding

4  further.

5      11.    On December 5, 2008, Omeros' Human Resources Manager circulated Omeros'

6  recently adopted Whistleblower Policy to all company employees including plaintiff.

7      12.    On December 5, 2008, plaintiff called several of the scientists who worked on the

8  NIH program. On information and belief, in response to questions from plaintiff, the scientists

9  told plaintiff that they were reporting more hours than they worked on the project. Plaintiff did

10  not review the hours that were reported or the hours that were charged to NIH.

11      13.    On December 8, 2008, plaintiff told Mr. Mann his complaint about hours being

12  reported improperly on a single NIH grant. Plaintiff specifically informed Mr. Mann that he was

13  complaining pursuant to Omeros' Whistleblower Policy and, when offered other avenues of

14  addressing the concerns by Mr. Mann, plaintiff specifically reiterated his desire to invoke the

15  Whistleblower Policy and that he did not want to address the complaint through a management

16  investigation.

17      14.    Plaintiff held himself out as a sophisticated individual with substantial experience

18  in corporate finance, and was also familiar with Omeros' Audit Committee Charter, which

19  authorized the Audit Committee to engage advisors and consultants, at Omeros' expense, in the

20  course of its duties. Plaintiff knew or should have known that as a consequence of his requesting

21  whistleblower treatment of his concern, the company would be required to engage outside

22  investigators to assist the Audit Committee.

23      15.    Omeros' Audit Committee immediately initiated an investigation into plaintiff's

24  complaint. The Audit Committee engaged special counsel to investigate plaintiff's complaint.

25      16.    The Audit Committee determined that the scientists were recording in Omeros'

26  internal timekeeping system more hours than they worked on the project during the relevant time

27  period. But, the Audit Committee discovered that Omeros' Controller, David Toll, (an Omeros'

28

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 18
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1  employee who reported directly to plaintiff) had initiated internal controls to limit the number of

2  hours that Omeros charged to NIH.   The Audit Committee determined that NIH was never

3  charged more hours than the scientists worked on the project.

4      17.     During the period of approximately December 22, 2008, through the first week in

5  January 2009, plaintiff brought his personal laptop computer into Omeros' offices.  During this

6  time, plaintiff worked on his personal computer, side-by-side with his Omeros-supplied laptop

7  computer.   Sometime during December 2008, plaintiff contacted Omeros' IT department and

8  asked how to connect his personal laptop within Omeros' offices to Omeros' network via virtual

9  private network software ("VPN").

10     18.     During the period of approximately December 22, 2008, through the first week in

11  January 2009, plaintiff shielded the screen of his personal computer from the view of Omeros'

12  Controller, David Toll.

13     19.     After using his personal computer in his office for one and a half weeks,

14  Ms. Kelbon, Omeros' General Counsel, confronted plaintiff regarding his use of his personal

15  laptop and reminded plaintiff about his obligations under the proprietary information agreement.

16  Plaintiff persisted in the behavior for an additional week after being requested by Ms. Kelbon to

17  stop.

18     20.     After the Audit Committee completed its investigation, Omeros asked plaintiff on

19  December 19, 2009, to proceed with completion and execution of a regular monthly certification

20  to Omeros' venture debt lender concerning the accuracy of Omeros' financial statements for the

21  month prior.  Between December 19, 2008, and December 30, 2008, plaintiff repeatedly refused

22  to execute this certification unless he first received from the Company personal assurances and

23  authorizations to conduct his own investigation of unspecified concerns.  These assurances and

24  investigation, if provided and authorized, would not have changed the accuracy and veracity of

25  the financial statements to which he was willing to certify with such assurances and

26  authorization.  The financial statements plaintiff sought to have investigated had been prepared

27  by him or under his supervision in the first place.

28

**DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 19**
(Case No. 2:09-CV-1342 JCC)

1    21.    During the period of December 19, 2008, through January 13, 2009, plaintiff

2    diverted company resources, including finance department's staff time, away from departmental

3    priorities to assist him in conducting an unauthorized personal investigation. During this time,

4    plaintiff bullied and berated the finance department staff, resulting in half of the department's

5    staff tendering or threatening their resignations.

6    22.    Plaintiff was terminated from employment on January 29, 2009.

7    23.    Plaintiff refused to return his company-purchased BlackBerry™ portable data

8    device to Omeros.

9    24.    Due to plaintiff's secretive behavior and peculiar use of his personal computer,

10    Omeros hired an electronic discovery firm to conduct a forensic analysis of the hard drive from

11    the company-supplied laptop computer that was used by plaintiff.

12    25.    On April 22, 2009, the electronic discovery firm reported that the forensic

13    examination of plaintiff's hard drive revealed that plaintiff copied Omeros' documents to

14    removable storage devices and emailed Omeros' documents to his personal email address. The

15    electronic discovery firm also reported that plaintiff's hard drive showed plaintiff had made

16    extensive use of Omeros' computer for personal internet activity. Omeros also discovered from

17    a review of archived data that plaintiff created a document titled "Transition Plan" on

18    November 26, 2008. The document states that plaintiff felt "extremely vulnerable with regards

19    to job security" and wanted to "explore the options for mitigating this vulnerability."

20    **D.    COUNTERCLAIMS**

21    **a.    Breach of Contract**

22    26.    Omeros re-alleges and incorporates by reference the allegations contained in

23    counterclaim paragraphs 1-25 above.

24    27.    Plaintiff entered into the PIIA in exchange for valid consideration as his

25    employment with Omeros began.

26

27

28

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 20
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

28.    The PIIA prohibits plaintiff from disclosing or using any of Omeros' proprietary information, except as authorized by the company, and required that plaintiff return Omeros' documents and property to Omeros upon the termination of plaintiff's employment.

29.    Plaintiff has breached the PIIA by removing proprietary information and documents from Omeros' system, removing and not returning Omeros' documents, and not returning a BlackBerry™ owned by Omeros and containing Omeros' proprietary information after his termination.

30.    Omeros cannot place a precise dollar amount on the damages incurred by plaintiff's conduct, the protection that its PIIA provides, nor the harm it will continue to suffer if plaintiff is permitted to evade that protection.

31.    In addition to that identified above, the irreparable harm to Omeros consists of, but is not necessarily limited to, the possession of its proprietary and non-public information and the potential use of the same or misappropriation of the same by a third party to this action, to the damage of Omeros' business interests, or its use for purposes competitive to Omeros or to harm Omeros' business plans, products, anticipated products or otherwise.  Plaintiff has no right to possess Omeros' proprietary information and his mere possession of it damages Omeros' continued interest in enforcing its PIIA.

32.    Omeros has no adequate remedy at law against plaintiff.

33.    Plaintiff should be ordered to return any documents and/or company information taken from Omeros to Omeros to prevent further breaches of contract and further harm to Omeros.

**b.    Misappropriation of Trade Secrets (Chapter 19.108 RCW)**

34.    Defendant re-alleges and incorporates by reference the allegations contained in counterclaim paragraphs 1-33 above.

35.    Omeros has expended substantial time, money and effort in the development of its confidential, proprietary and trade secret information.

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 21
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

36.     Some of the confidential, proprietary and trade secret information of Omeros derives independent economic value (actual or potential) from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from the disclosure or use of this information.

37.     This confidential, proprietary and trade secret information is the subject of efforts by Omeros that are reasonable under the circumstances to maintain the secrecy of the information.

38.     Such confidential, proprietary and trade secret information constitutes protectable trade secrets of Omeros.

39.     Omeros' trade secret information gives Omeros a competitive advantage in the marketplace.

40.     Plaintiff has a statutory duty to keep secret, and not to disclose or use, the trade secrets of Omeros.

41.     Plaintiff removed proprietary and trade secret information from Omeros.  Plaintiff does not have the right to possess any of Omeros' proprietary and trade secret information.  On information and belief, plaintiff intends to disclose or improperly use Omeros' trade secrets.

42.     On information and belief, plaintiff's inevitable disclosure or use of Omeros' trade secrets is proximately causing or will proximately cause injury to Omeros in violation of Washington's Uniform Trade Secrets Act, Chapter 19.108 RCW.

43.     If plaintiff is not enjoined from misappropriating or threatening to misappropriate the trade secrets of Omeros, his conduct will proximately cause further injury to Omeros in violation of Washington's Uniform Trade Secrets Act, Chapter 19.108 RCW.

44.     If plaintiff's actual and/or threatened misappropriation of trade secrets is not enjoined, Omeros will suffer irreparable harm for which they have no adequate remedy at law.

**c.     Breach of Fiduciary Duty and Duty of Good Faith (RCW 23B.08.420)**

45.     Defendant re-alleges and incorporates by reference the allegations contained in counterclaim paragraphs 1-44 above.

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 22
(Case No. 2:09-CV-1342 JCC)

46. As the Chief Financial Officer of Omeros, plaintiff was a fiduciary and an officer of Omeros and owed Omeros a duty of loyalty and good faith.

47. Plaintiff breached his duty of loyalty and good faith to Omeros by failing to conduct a reasonable investigation into his complaint regarding the NIH grant management issues raised in his whistleblower complaint prior to blowing the whistle. Plaintiff failed to review the hours reported or assess Omeros' internal controls, even though the controls were initiated by plaintiff's subordinate and plaintiff had been assigned personal responsibility for the financial management of the NIH grant. Plaintiff's complaint was made in bad faith and was an attempt at self preservation, not concern for or about Omeros or its billings to the federal government.

48. As a result of plaintiff's breach of his duty of loyalty and good faith, Omeros incurred significant and unnecessary outside costs to the Audit Committee and inside staffing costs and distraction from business to conduct the investigation into plaintiff's complaint, in an amount to be proven at trial.

49. As a result of plaintiff's breach of his duty of loyalty and good faith, Omeros has been damaged in an amount to be proven at trial.

### DEFENDANT'S PRAYER FOR RELIEF

WHEREFORE, having fully answered plaintiff's Complaint, Defendant Omeros prays:

1. That plaintiff take nothing by the Complaint for Damages and that it be dismissed with prejudice and without any award of attorneys' fees, costs or expenses to plaintiff;

2. That Defendant Omeros be awarded its attorneys' fees, costs and expenses incurred in defending this action;

3. That Defendant Omeros be granted preliminary and permanent injunctive relief requiring the return of all Omeros devices, confidential information and any other company property possessed by plaintiff, without bond.

4. That Defendant be granted leave to conform its pleadings to the proofs;

DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 23
(Case No. 2:09-CV-1342 JCC)

Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404

1      5.      That the Court enter judgment for Defendant on its Counterclaims in this action in

2   an amount to be determined at trial; and

3      6.      For such other and further relief as the Court deems just and equitable.

4   DATED this 22nd day of September, 2009.

5                               JACKSON LEWIS LLP

6

7

8                       By:     s/ Barry Alan Johnsrud
                                Barry Alan Johnsrud, WSBA #21952
9                               Gina D. Wolverton, WSBA #35738
                                600 University Street, Suite 2900
10                              Seattle, WA  98101
                                Telephone:  (206) 405-0404
11                              Facsimile:  (206) 405-4450
                                Attorneys for Defendant Omeros
12                              Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS** - 24
(Case No. 2:09-CV-1342 JCC)

1

## DECLARATION OF SERVICE

2     The undersigned declares under penalty of perjury under the laws of the United States of

3 America and hereby certifies that on this day, a true and accurate copy of the document to which

4 this declaration is affixed was filed with the Clerk of the Court using the CM/ECF System,

5 which will send notification of such filing to the following:

6
                Thomas A. Lemly, WSBA #5433
                Davis Wright Tremaine LLP

7
                1201 Third Avenue, Suite 2200
                Seattle, WA  98101-3045

8
                Telephone:  (206) 757-8085

9
                Facsimile:  (208) 757-7085
                E-Mail:  tomlemly@dwt.com

10

11     DATED this 22nd day of September, 2009.

12

13

14                         Deborah A. Hatstat

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT OMEROS' ANSWER AND AFFIRMATIVE
DEFENSES TO COMPLAINT FOR DAMAGES AND
COUNTERCLAIMS - 25**
(Case No. 2:09-CV-1342 JCC)

**Jackson Lewis LLP**
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
(206) 405-0404